HOFMANN & SCHWEITZER
Attorneys for Claimant ROBERT BOODY
360 W. 31st Street, Suite 1506
New York, NY 10001
Tel: 212-465-8840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
IN THE MATTER OF THE PETITION OF                          09 Civ. 5600
NORTH EAST MARINE, INC., AS OWNER                        (Amon, J., Mann, M.J.)
OF THE TUG ELENA, A 35' DECK BARGE
AND A 40' DECK BARGE
FOR EXONERATION FROM AND
LIMITATION OF LIABILITY
-------------------------------------------------------------------x

CLAIMANT ROBERT BOODY'S MOTION TO DISMISS THE LIMITATION
PROCEEDING OR, IF DENIED, MOTION TO STAY PROCEEDING AND REMAND
ACTION TO STATE COURT

STATEMENT OF FACTS

On January 29, 2008, claimant Robert Boody was a construction worker employed by

Caribe Construction Co. ("Caribe") on a construction project repairing the Cross-Bay Bridge

which crosses Jamaica Bay in Queens, New York. (Ex. 1, Testimony of Robt. Boody T20, 24).

Caribe was a subcontractor to the general contractor, El Sol Construction ("El Sol") which had

the main contract with the Metropolitan Transportation Authority to renovate the bridge deck.

(Ex. 2, Testimony of Ernie Sanchez[1]; Ex. 5, Testimony of Francoise Guillet[2] T52).  The work

Caribe was performing involved installing along the bottom of the bridge structure a temporary

scaffold to be used to do other construction work being done on the bridge deck. (Ex. 1 Boody

---

[1]     Ernie Sanchez is the President of Caribe Construction, who testified at deposition
in this matter.

[2]     Francois Guillet is the owner of Petitioner, North East Marine. He testified at
deposition in this matter.

T51; Ex. 5 Guillet T40). To access the bottom of the bridge North East Marine, Inc. ("North East"), the petitioner, was hired by Caribe to provide small tug boats and work barges to ferry Caribe's men and materials to perform the scaffold installation. The barges supported manlifts used by the men to access the bottom of the bridge. (Ex. 1 Boody T21-24, 42-43,52, 59, 69; Ex. 5 Guillet T26, 40, 68).

On January 29, 2008, Mr. Boody suffered an injury when he was walking or standing on a bridge abutment and column structure in the middle of Jamaica Bay supporting the bridge. (Ex. 3, Accident Report, Ex. 1 Boody T88-89). The injury occurred shortly after he had stepped off a barge which had ferried him to the abutment where construction related activity was ongoing. (Ex. 1, Boody T88-110). He was injured when a mooring line that ran from a small tug boat, the OSAGE,  and that barge, in combination, tightened up unexpectedly as the tug and barge[3] were being driven to and moored to the bridge column in the area where Mr. Boody was located.  (Ex. 1 Boody T 88-110; Ex. 4, Testimony of Robt. Zervas[4] T24-27, 33-35). The small tug, called the OSAGE, was owned and operated by North East, as was the small barge. (Ex. 5, Guillet T23-24).  The tug and barge were connected to each other by lines from the tug to the barge.  The OSAGE was pushing the small barge, which also was owned by North East, and they were both in the process of being brought to the bridge abutment to be tied up to alongside

---

[3]    It is believed that the barge was named either the SM1 or SM2, both of which were owned and operated by petitioner North East Marine, Inc.

[4]    Robert Zervas was a tugboat captain employed by North East Marine. His primary duty was to operate the Tug OSAGE, pushing the barge to which it was connected on this worksite. He was operating the OSAGE on the day of Mr. Boody's incident. Zervas T13-15, 20, 24-25, 28-29.

2

the abutment. (Ex. 4, Zervas T13-15, 20, 24-25, 27-32; See Ex. 5 Guillet T25-27, 70-73, 153-55). The injury occurred when one of the mooring lines from that tug-barge combination, which was to be used to tie the boats securely to the bridge column structure, trapped and pinned Mr. Boody against one of the columns. (Ex. 4, Zervas T32-35). The mooring line that caught him ran from the small barge that the OSAGE was pushing to the bridge abutment. (Ex. 4, Zervas T33-35). It is alleged that due to the negligence of the operators of the two vessels, including its deckhand, the mooring line tightened at a time when Mr. Boody was in the danger area of where it would 'fetch up' and tighten and pin him to the bridge column. (Ex. 4, Zervas T34-35; Ex. 5 Guillet T92-99, 150 ). When the line tightened, it caused him to suffer injuries. (Ex. 1, Boody T 110, 116).[5]

To recover for his on-the-job injuries, plaintiff commenced suit under New York law in the Supreme Court of New York, Queens County, on or about June 29, 2008.  The complaint names as defendants, the Petitioner, North East Marine, Inc. It also names the general contractor which hired North East, El Sol Contracting, Inc.  El Sol was Mr. Boody's employer. Additionally, Metro Marine, Inc., and Metro Marine Sales & Service, Inc., two entities related to North East, were named as defendants, but they have been dismissed by stipulation.  Finally, the complaint also named Francois Guillet, the sole shareholder of North East Marine, Inc. for his alleged role in causing Mr. Boody's injuries. (Exhibit 6, Complaint, Boody v. North East

---

[5]

    Mr. Boody testified that he thought that the line tightened up on him as a result of wave motion rocking the tug/barge. Although how the line tightened may be a factual dispute to be resolved, there is no question that by all accounts the line which caught Mr. Boody was connected to the combination of the OSAGE and one of North East's barges, the SM2, it is believed.

Marine, et al., Queens County). Answers were filed by defendants North East Marine and El Sol Contracting. (See exhibits 7 and 8). Francois Guillet has not answered the Queens County complaint, however, he has filed an answer and claim in the within proceeding. (Ex. 14). Among the defendants who answered in the Queens County action, North East and El Sol, there exist cross-claims and counter-claims for indemnity and contribution. (See exhibits 7, 8 and 14). Similar claims for indemnity and contribution are made by El Sol and Guillet in this proceeding, as well. (See exs. 13 and 14).

The Queens Complaint clearly alleged that the negligence that led to Mr. Boody's injury was due to the negligence of the operation of the OSAGE. (See Ex. 6, Second Cause of Action).

On December 22, 2009, almost six months after it received the summons and complaint in the Queens action, this limitation of liability action was commenced upon the filing of the petition for limitation of liability filed by petitioner North East Marine, Inc. The petition named three vessels, the TUG ELENA and two unnamed barges. The petition did not name or allude to the OSAGE. (Ex. 10, Petition for Limitation by North East Marine, Inc.).

As a consequence, the litigation previously filed on Mr. Boody's behalf in New York State Supreme Court in Queens County was stayed by this Court by order entered on February 19, 2010. (Ex. 11).

Thereafter Mr. Boody filed an answer to the petition and a claim in this proceeding. (Exhibit 12). The claim and answer denied petitioner's right to limitation or exoneration, and plead other affirmative defenses. El Sol Contracting also filed an answer to the petition, and asserted various counter-claims. (Exhibit 13). Francoise Guillet, the owner of North East, filed

4

an answer and claim. (Exhibit 14).[6]

As discovery and case preparation proceeded, claimant Boody, on August 25, 2010, prepared and served on petitioner proposed stipulations that, if filed, would lead to the court staying this limitation proceeding and remanding the case to Queens County Supreme Court for a liability and damages trial, which would preserve claimant's right to a state jury trial as well as petitioner's right to a trial on the limitations issue in the federal court. (See exhibit 15, letter of Paul Hofmann, August 25, 2011 with proposed stipulations).

Petitioner flatly rejected the proffered stipulations, and threatened to seek Rule 11 sanctions for claimant Boody having the audacity to seek a stay of the admiralty proceeding and a remand of the case to Queens County. (See exhibit 16, letter of David Hornig, Esq.).

Over a year ago, on September 13, 2010, claimant Boody requested of the court permission to make a motion to stay these proceedings and remand the case back to Supreme Court, Queens County. (See exhibit 17, letter of plaintiff's counsel, September 13, 2010).  A conference was held in December 2010 at which the court denied plaintiff's request to make a motion at that time, since there were several discovery issues to be resolved.  The court advised the parties that it would consider entertaining the request for the claimants to make such a motion at a later date if the parties still wished to raise the issue.

Claimant Boody has obtained the court's permission to make the motions involved herein, to wit, a motion to dismiss outright the petition as being irreparably defective in that petitioner failed to include the at-fault vessel, the Tug Osage, in the petition, and the alternative

---

[6]

     As the court is aware, Mr. Guillet has private counsel who has asserted that North East's carrier is breaching its duty to defend him personally in this action.

request for relief, an order staying these federal proceedings in favor of the Queens County litigation.

Claimant Boody's counsel has been advised by counsel for El Sol that it will execute the stipulations proposed by claimant Boody. (Exhibit 18, letter of Pillinger Miller Tarallo 8/12/11). Mr. Guillet, through counsel, has indicated likely he, too, will, but still needs time to research the issue. However, Guillet's decision is irrelevant. He is the owner of petitioner, and petitioner cannot have a claim against itself, which in essence it is doing, as Mr. Guillet is the owner, shareholder and officer of North East. Mr. Guillet does not assert a claim of breach of fiduciary duty, fraud or anything else that would entitle him to damages against North East. He asserts no contract action *against North East* for failure to defend, appoint counsel, etc., rather, he may have such a claim against North East's *insurer*, and its counsel.

POINT I:    THE PETITION FOR LIMITATION IS FATALLY DEFECTIVE IN THAT IT FAILS TO NAME OR TENDER THE TUG OSAGE, THE AT-FAULT VESSEL, AND THUS, THE PETITION MUST BE DISMISSED WITH PREJUDICE

    A.    Petitioner's Failure to Name the Tug Osage, the At-Fault Vessel, and further, to Exactly Name the Barge the Osage Was Pushing, Make the Petition Fatally Defective, Warranting Dismissal with Prejudice

In *Sacramento Nav. Co. v. Salz*, 273 U.S. 326 (1927) it was held that when a tug and its tow are involved in a tort, where both have common ownership and both were under common command, then both can be liable, and both must be tendered in the limitation proceeding, failing which the court loses jurisdiction over the petition. Accord, *Cenac Towing, Inc. v. Terra Resources, Inc.*, 734 F.2d 251 (5th Cir. 1984). Here this legal principle requires dismissal of the petition for limitation because North East failed to name the Tug OSAGE which petitioner

6

concedes was the vessel under power which was involved in the incident leading to Mr. Boody's injury.

"When the 'offending' vessel in whose behalf limitation is claimed is not one vessel but a flotilla (for example, a tug and her tows), the question is raised whether the whole flotilla must be surrendered or only the particular vessel which was most immediately involved in the collision.' Gilmore & Black, The Law of Admiralty 716, fn. 132 (1957)." *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.* 377 F.2d 724 (5th Cir. 1967). "... [T]o limit liability for breaches of duties incidental to a contract, all vessels which take part in the undertaking must be surrendered." *Standard Dredging Co. v. Kristiansen*, 67 F.2d 548, 550 (2d Cir. 1933).

The court in *Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 331 (1927), cited with approval *The Columbia*, 73 F. 226 (9th Cir 1896) on this very issue, and the result that flows from the failure. The Supreme Court described approvingly the *Columbia* and its holding as follows:

> In *The Columbia, supra,* it was held that a barge having no motive power and a tug belonging to the same owner and furnishing the motive power constituted one vessel for the purposes of the voyage. In that case, wheat was to be transported by means of the barge, and the owner of the barge and tug undertook the transportation...It was accordingly held that, without surrendering both vessels, the owner was not entitled to the advantages of Revised Statutes, § 4283 et seq. (Comp. St. § 8021 et seq.), providing for a limitation of liability of 'the owner of any vessel,' etc.

In *Billiot v. Dolphin Services, Inc.*, 225 F.3d 515 (5th Cir. 2000) the Fifth Circuit states the pleading requirements before limitation may be sought:

> Under the Act, the vessel owner's liability is limited to the value of his interest in the vessel. Limitation cannot be claimed in general; instead, the vessel for which limitation is sought must be identified, because Fed.R.Civ.P. Supplemental Rule for Certain Admiralty and Maritime Claims F(2) requires the limitation of

liability complaint to include "all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited". Such facts include the vessel's identity and its value.

*Id* at 517.

The remedy of dismissal of the petition was applied in *The Captain Jack*, 169 F. 455 (Dist. Ct. Conn. 1909), where the administratix of the estate of the plaintiff brought an action against the petitioner, the owner of the CAPTAIN JACK for causing the plaintiff's decedent to be killed on the vessel.  That boat, along with another boat owned by the Captain Jack's owners, the HARRIET, was being used to raise a sunken vessel when one of the bolts which held a strap at the end of a boom on the boat broke, leading to said equipment falling to the deck and fatally injuring plaintiff's decedent. The petitioners, the owners of the Captain Jack, only pleaded the Captain Jack and the strap band which came off the boom of the derrick and caused the injury. The petitioner did not include the HARRIET. The Court dismissing the petition holding that there can be no valid limitation of liability action without the petitioner first surrendering all of the vessels involved.

> B.    Any Attempt Now to Seek to File a Limitation Proceeding on Behalf of the Osage, or Amend the Current Petition, Would Be Futile as the Six-Month Statute of Limitations for Filing a Limitation Petition Has Passed

Any attempt now to seek to file a limitation proceeding on behalf of the Osage, or amend the current petition, would be futile. *Doxsee Sea Clam Co., Inc. v. Brown,* 13 F.3d 550 (2d Cir.1994) makes clear that the petition for limitation of liability must be filed within 6 months of notice of the claim might exceed the value of the at-fault vessel.  There, the injured seaman's attorney had communicated with the vessel owner, through its claims agent, the significance of

the personal injury claim, and that it would exceed the value of the boat in question.  The

limitation proceeding was filed long after the six month notice period would have passed, thus,

the District Court dismissed the limitation proceeding, which the Court of Appeals affirmed.

As stated in *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32 (2d Cir. 1982)

the statute provides, in pertinent part:

> "The vessel owner, within six months after a claimant shall have given to or filed
> with such owner written notice of claim, may petition a district court of the
> United States of competent jurisdiction for limitation of liability within the
> provisions of this chapter...." [This provision] is a time bar with respect to a
> vessel owner's filing of a petition for limitation of liability. *Deep Sea Tankers,
> Ltd. v. The Long Branch*, 258 F.2d 757, 772 (2d Cir. 1958), cert. denied, 358
> U.S. 933, 934 (1959); *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 585 (2d
> Cir.), appeal dismissed, 358 U.S. 30 (1958). Its purpose is to require that a
> shipowner, in order to gain the benefit of his statutory right to limit his liability,
> act promptly. *In re Goulandris*, 140 F.2d 780, 781 (2d Cir.), cert. denied, 322
> U.S. 755 (1944). As soon as a claim is filed against him the shipowner has a
> six-month period within which to investigate whether the amount of the claim or
> other claims likely to be the subject of litigation arising out of the same
> occurrence may exceed the value of his ship. If such an excess appears
> reasonably possible, he will be barred from taking advantage of the right to limit
> his liability unless he files his petition within the six-month period.

*Id* at 33-34.

Nor can petitioner claim that it is an "owner" and that it filed for some "vessel" it owned

and thus can limit its liability.  In *Liverpool, Brazil & River Plate Steam Nav Co Ltd v. Brooklyn

Eastern District Terminal*, 251 U.S. 48 (1919), affirming 250 F. 1021 (2d Cir. 1917), Justice

Holmes brushed aside any such argument by holding that the literal meaning of the language of

the law restricts application of the statute only to the offending vessel, and not to other vessels.

In so doing, he stated "[f]or clearly the liability would be made to exceed the interest of the

owner 'in such vessel' if you said frankly, in some cases we propose to count other vessels in,

9

although they are not 'such vessel'; and it comes to the same thing when you profess a formal compliance with the words but reach the result by artificially construing 'such vessel' to include other vessels if only they are tied to it."

Here, the court should note that the proceeding was brought on behalf of the Tug ELENA and two unnamed barges. The ELENA, the petitioner has conceded, was not involved in the incident, thus, as a matter of fact and law, limitation regarding it is unavailable under the statute. All evidence shows that the offending vessel was the Tug OSAGE, which has not been named in the limitation proceeding. Any attempt to amend to add it would be fruitless as the six month limitation period within the Limitation of Liability Act has long passed. (The state court personal injury complaint filed in 2009 specifically states that the OSAGE was the offending vessel causing claimant's injuries).

Accordingly, the court must dismiss with prejudice the limitation proceeding. North East has forfeited the right to assert any limitation proceeding by failing to claim limitation for the OSAGE within the statutory period for doing so.

POINT II:    UPON FILING OF PROPER STIPULATIONS, CLAIMANTS ARE ENTITLED TO A STAY OF A LIMITATION PROCEEDINGS FILED BY A VESSEL OWNER IN ORDER THAT THE CLAIMANTS MAY PURSUE THEIR STATUTORILY GUARANTEED STATE COURT COMMON LAW ACTIONS

It is claimant Boody's primary position that the entire limitation proceeding is fatally defective and should be dismissed, as discussed in Point I, *supra*., because petitioner failed to include the at-fault vessel, the Tug Osage, in the limitation proceeding. However, if the court finds to the contrary, and that petitioner's action survives claimant's motion, claimant Boody asks the court to grant him a stay of this proceeding and a remand of the action to the Supreme Court, Queens County, for the following reasons.

A.    Under the Savings to Suitors Clause, Which Controls Federal Maritime Jurisdiction, A Plaintiff has an Absolute Right to Proceed in State Court, With All Attendant Rights, Including, but Not Limited to, A Trial By Jury

A party claiming injury due to a vessel owner's maritime tort has an absolute right to proceed with his claim for damages in a state court common law action. However, there is tension when a vessel owner against whom said claim is made, avails himself of rights within the Limitation of Vessel Owner's Liability Act , 46 USC §30503 *et seq.* ("LOLA), which guarantees a vessel owner the right to a federal court admiralty proceeding to limit its liability to the value of the vessel post-accident, so long as the occurrence did not occur with the privity and knowledge of the owner.

The basis for a claimants' right to try the case in state court stems from the statute by which Congress granted the lower courts their jurisdiction over maritime cases, currently codified at 28 USC § 1333(1). Therein, Congress provided to litigants the option to bring their maritime cases in state court, under what has come to be known as the "Saving to Suitors

11

Clause":

28 U.S.C. § 1333(1) provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

It is well-settled that "the saving to suitors clause [i]s a grant to state courts of in personam jurisdiction, concurrent with admiralty courts." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001), citing *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 123 (1924). A litigant's right to bring his or her maritime claim in state court is a fundamental right under federalism because the "Saving to Suitors Clause" limits the federal judicial power to hear maritime cases only when the claimant consents, but for the effect of some other federal statute. Relevant to the within discussion, of course, is one other federal statute, LOLA, which allows a shipowner to limit its liability, in a federal court proceeding, for its fault in a maritime accident to the value of the vessel after the incident so long as it carries its burden of proving that the loss did not occur with its 'privity or knowledge."

The protections the savings to suitors clause seeks to protect starts with the right to a jury trial, one not guaranteed in a federal court admiralty proceeding. But the clause is far more than that. In fact, the U.S. Supreme Court dismissed as a "flawed premise" the notion that all that is saved to suitors is the right to jury trial. *Lewis v. Lewis & Clark*, supra, 531 U.S. at 452-53. The saving to suitors clause entitles claimants to all of the remedies and procedures available in the state forum; it is not limited to the right to jury trial, or even to procedures or remedies available at common law. *Lewis & Clark*, 531 U.S. at 445. In *Atlantic Fruit*, the court held an arbitration agreement enforceable under the saving to suitors clause, notwithstanding

12

that this was not a remedy available at common law. In *Lewis v. Lewis & Clark*, the court explained:

> We reasoned [in *Atlantic Fruit*] that agreements to arbitrate were valid under admiralty law, and that the State of New York had the power to confer on its courts the authority to compel parties to submit to arbitration. We explained that the state arbitration law merely provided a remedy in state court:
> "The 'right of a common law remedy,' so saved to suitors . . . include[s] all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. It includes remedies in pais, as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at common law; remedies in equity, as well as those enforceable in a court of law.

*Id.* at 445.

The Supreme Court has recognized that the vessel owner's rights under the Limitation Act are in direct conflict with the injured claimant's rights under the Saving to Suitors Clause. In *Lewis*, there was a conflict between the saving to suitors clause and LOLA. Petitioner sued respondent in state court under the saving to suitors clause, thus, that court had jurisdiction to hear the claims. Respondent sought limited liability for petitioner's claims in federal court and the Limitation Act granted the federal court jurisdiction over that action. Both parties selected legitimate forums for their claims, and therein lay the conflict. *Lewis v. Lewis & Clark*, 531 U.S. at 452.

The tension between the two statutes has been resolved by the holdings of several important decisions. First off, the saving to suitors clause has been expressly held to preserve remedies and the concurrent jurisdiction of the state courts over admiralty and maritime claims. *Lewis v. Lewis & Clark*, 531 U.S. at 445.

When a LOLA action has been filed, and a monition against any other suit is issued by

13

the federal court, the Supreme Court has held that with appropriate protections to the shipowner

the limitation action should be stayed, and the claimant permitted to proceed in state court, even

when the claimant has not demanded a jury in the state court proceeding:

> [T]his Court's case law makes clear that state courts, with all of their remedies, may adjudicate claims like petitioner's against vessel owners so long as the vessel owner's right to seek limitation of liability is protected.  Respondent seeks to invert that rule, making run of the mill personal injury actions involving vessels a matter of exclusive federal jurisdiction except where the claimant happens to seek a jury trial.  We reject that proposal and hold that the Court of Appeals erred in reversing the District Court's decision to dissolve the injunction.

*Lewis v. Lewis & Clark,* 531 U.S. at 455-56.

> B. Claimants May Pursue Their Guaranteed State Court Proceedings Right Upon Providing Proper Stipulations Protecting the Vessel Owner's Limitation Act Rights

Where there are multiple claimants, if each enters into appropriate stipulations, it then

becomes the equivalent of a 'single claimant' situation, where the federal court stay should be

lifted, the case remanded to state court, reserving the right for a future limitation determination

to the federal court. *In the Matter of the Complaint of Illinois Marine Towing, Incorporated,*

498 F.3d 645 (7th Cir. 2007).  There, several passengers on a pleasure craft were injured when

their vessel collided with a barge.  They sued in state court.  The vessel owner filed a limitation

proceeding.  Plaintiffs in the state proceeding moved to lift the stay by filing stipulations that

they jointly would not seek damages in excess of the limitation fund, that they would accept pro-

rata shares of any limitation fund, the district court had exclusive jurisdiction over all limitation

of liability issues, the district court had exclusive jurisdiction to determine the value of the fund

and that they waived any claim of *res judicata* on the issue of limitation of liability based on any

judgement of the state court.  The court found these stipulations were sufficient and converted

14

the multiple claims into the equivalent of a single claimant fund, and allowed the remand to the state court.

Claimants acknowledge that the limitation issue can only be decided by a federal court. But that is the only issue over which the court has exclusive jurisdiction. Case law is clear that claimants should be permitted to first try their liability and damages issues to a jury in state court, as is a guaranteed right under the Saving to Suitors Clause of 28 U.S.C. § 1333(1).

So long as the claimants stipulate to return to federal court to address the limitation issue before seeking to enforce a jury award in excess of the limitation fund, the courts protect, to the greatest extent possible, claimants' saving to suitors rights, including the right to a jury trial. *Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604 (S.D.N.Y. 1995). There, the court ruled that personal injury and wrongful death claimants were entitled to jury trial on all issues except limitation, stating: "This result is driven by the need to preserve where possible the right to jury trial on claims that, but for the commencement of a limitation proceeding, the claimants could have brought elsewhere under the saving to suitors clause." 895 F.Supp. at 612. The claimants there elected to proceed to a jury trial in the federal court, rather than bringing a state court action.

The Supreme Court has recognized this type of practice is appropriate, so that a vessel owner's limitation right to be heard in a federal court is not prejudiced, while federalism requires that the federal court must do what is reasonable to preserve the injured claimant's saving to suitors clause rights to have a state court trial. As *Lewis v. Lewis & Clark*, 531 U.S. at 449 stated, discussing *Atlantic Fruit*:

[B]oth [lower] courts erred in failing to recognize that the state court was

15

competent to hear the employee's personal injury claims and the vessel owner's claim for limitation. In our view, the choice before the District Court was whether it should retain the limitation action and preserve the right of the vessel owner but destroy the right of the employee in state court to a common law remedy, or allow the action in state court to proceed and preserve the rights of both parties. We concluded that the latter course was just. We decided that the District Court should have dissolved the injunction and allowed the employee to proceed with his claim in state court, and retained jurisdiction over the petition for limitation of liability in the event that the state court proceedings necessitated further proceedings in federal court.

In that same vein, the Supreme Court in *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152-53 (1957) stated:

> The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability. In fact, the Congress not only created the limitation procedure ... but it reserved to ... suitors their common-law remedies. 63 Stat. 101, 28 U.S.C. § 1333, 28 U.S.C.A. § 1333. In view of the explicit mandate from the Congress the respondent must not be thwarted in her attempt to employ her common-law remedy in the state court where she may obtain trial by jury.

In reaching this conclusion, the court noted that the Act provides vessel owners with an unprecedented level of protection that no other defendant receives, and it (the Act) should not be used to diminish a claimant's saving to suitors clause rights, absent prejudice to the owner's right to seek (not necessarily obtain) limitation:

> The state court proceeding could have no possible effect on the petitioner's claim for limited liability in the admiralty court and the provisions of the Act, therefore, do not control. *Langnes v. Green*, 1931, 282 U.S. 531, 539-540. There can be no reason why a shipowner, under such conditions, should be treated any more favorably than an airline, bus, or railroad company. None of them can force a damage claimant to trial without a jury... Likewise, the shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common-law remedies available against other parties in damages actions. The Act, as we have said, was not adopted to insulate shipowners from liability but merely to limit it to the value of the vessel and the pending freight.

*Id.*

16

In the Second Circuit, the case of *Complaint of Dammers & Vanderheide*, 836 F.2d 750 (2d Cir. 1988) is relevant. There the claimants were a seriously injured longshoreman and his wife. The longshoreman was injured during cargo operations on a ship. They commenced suit in the Supreme Court, New York County for their injuries. Shortly thereafter the shipowner filed the limitation action. The state court plaintiffs, claimants in the limitation proceeding, offered petitioner significant stipulations which would protect the interest of the petitioner to obtain a trial on the limitation issues, but the vessel owner rejected the proposals. The District Court agreed with claimants that the stipulations were sufficient, and stayed the limitation action. The Court of Appeals, in affirming, held:

> Of course, we are aware that endorsing the procedure employed by the district court, while also reaffirming the rule that the prospect of claims for indemnification creates a multiple claimant situation, could produce some tension in the rules governing such cases. In essence, the combination of our views on these matters creates a potentially broad exception that often could allow claimants such as the Coronas to proceed in other forums despite the fact that the shipowner faces what would be termed a multiple claimant situation. This entire area, however, is permeated by the tension inherent in the "inconsistent and contradictory policies" of the Limitation of Liability Act and the "saving to suitors". See G. Gilmore & C. Black, supra, § 10-18, at 864. Given this reality, we believe that admiralty courts must strive whenever possible to promote the policies underlying both provisions. As long as the stipulations filed by plaintiffs in outside proceedings are sufficient, and as long as the district court retains jurisdiction sufficient to preclude any "entry of judgment and consequent enforcement of ... recovery ... pending the outcome of th[e] limitation proceeding," 660 F.Supp. at 160, claimants such as the Coronas should be allowed to pursue their common law remedies outside of the admiralty forum.

*Dammers*, 836 F.2d 760.

Under controlling case law, Claimants are entitled to have the injunction lifted and the limitation action stayed to permit the Claimants to proceed against the Petitioners outside of the limitation proceedings provided that the Claimants enter into stipulations which preserve the

Petitioners' right to litigate the limitation issues before this Court to protect the Petitioner from

liability in excess of the limitation fund should this Court determine that the claims are subject

to limitation of liability and that Petitioners are entitled to limitation of liability. *Beiswenger*

*Enterprises Corp. v. Carletta*, 86 F.3d 1032 (11th Cir. 1996), cert. denied, 117 S.Ct. 2455

(1997). As explained in *Beiswenger* at 1038-39:

> In recent years, however, courts have allowed claimants to transform a
> multiple-claims-inadequate-fund case into the functional equivalent of a single
> claim case through appropriate stipulations, including stipulations that set the
> priority in which the multiple claims will be paid from the limitation fund. By
> entering such stipulations, the damage claimants effectively guarantee that the
> vessel owner will not be exposed to competing judgments in excess of the
> limitation fund. Without such competition for the limitation fund, a concursus is
> unnecessary, just as in a true single claimant case, and the claimants may litigate
> liability and damages issues in their chosen fora. See *Gorman v. Cerasia*, 2 F.3d
> 519, 526 (3d Cir.1993) ("[A]s long as the priority stipulations filed in the district
> court ensure that the shipowner will not be exposed to competing claims to the
> limited fund representing more than the value of his or her vessel, the district
> court may authorize the parties to proceed with the state court action.");
> *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571,
> 1576 (5th Cir.1992) ("Multiple claimants may reduce their claims to the
> equivalent of a single claim by agreeing and stipulating as to the priority in which
> the claimants will receive satisfaction against the shipowner from the limited
> fund."); *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*,
> 836 F.2d 750, 756 (2d Cir.1988) (explaining that appropriate stipulations "allow
> claimants who might not otherwise be entitled to do so to proceed with common
> law actions in other forums"); *S & E Shipping Corp. v. Chesapeake & Ohio Ry.
> Co.*, 678 F.2d 636, 644 (6th Cir.1982) (explaining that a multiple claims situation
> no longer exists, and a concursus is unnecessary, where the claimants enter
> priority stipulations); *Universal Towing Co. v. Barrale*, 595 F.2d 414, 420 (8th
> Cir.1979) (where two claimants stipulate the priority in which their claims will
> be paid from the limitation fund, the vessel owner is no longer subject to
> competing claims and therefore a concursus would serve no purpose); *In re
> Garvey Marine, Inc.*, 909 F.Supp. 560, 565 (N.D.Ill.1995) ("The multiplicity of
> claims will not bar dissolution of the stay order if the claimants, by their
> stipulations, transform the multiple claims into a single claim for purposes of the
> exception."); *In re Mohawk Assocs. and Furlough, Inc.*, 897 F.Supp. 906, 911
> (D.Md.1995) (same).

C.     Even If the Other 'Claimants' (Actually Defendants to the Initial Complaint Who Have Been Included Here as 'Claimants' by North East Marine) Do Not Agree to the Plaintiff's Proposed Stipulations, it Is Irrelevant Because Their Indemnity Claims Do Not Change this Single Claim Case to a Multiple Claim Case

North East Marine asserts that the claims for indemnity and contribution asserted by El Sol and Guillet are separate claims that prevent this case from being a single claimant case. Although there is a split of authority on the issue, it is irrelevant here because El Sol has agreed to abide by the stipulations, and Guillet is considering doing so, but even if not, Guillet has not claim for damages against his own company, North East, so it is irrelevant whether he agrees or not..

To date several Circuits have adopted the sounder view that indemnity and contribution claims are derivative claims that do not transform a single claimant case into a multiple claimant case. See e.g., *Universal Towing Co. v. Barrale*, 595 F.2d 414, 419 (8th Cir. 1979); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 644-45 (6th Cir. 1982) ("independent claim[s] of indemnity based on the parties' relative degrees of negligence and claim of contribution among joint tortfeasors do not create a multiple claims-inadequate fund situation").

The Second Circuit, however, has stated that such claims do make for a multiple claim situation. In *In Re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V*, 836 F.2d 750, 756-757 (2d Cir. 1988) the court stated:

> We first consider whether this case presents a "lone claimant" situation. It is generally acknowledged in admiralty cases that a claim for loss of consortium by one spouse is a separate and independent cause of action from the related tort claim of the other spouse. See, e.g., *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 284-86 (1980) (recognizing such an independent cause of action under general maritime law); *S&E Shipping*, 678 F.2d at 644 (holding that a personal

19

injury claim and a related loss of consortium claim can only be considered the same claim if the parties so stipulate); *In re Boraks*, 142 F. Supp. 364, 365 (D. Mass. 1956). It is equally well settled that the potential for claims for attorneys' fees or costs against a shipowner by a claimant or a third party creates a multiple claimant situation necessitating a concursus. See, e.g., *S&E Shipping*, 678 F.2d at 645-46; *Universal Towing*, 595 F.2d at 419. Although both situations exist in this case, both are cured by the specific concessions in the Coronas' third amended stipulation. The appellees stipulated that the personal injury claim.

\*\*\*

As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a concursus.

Claimant Boody asks this court to consider the other authorities to determine whether in fact the indemnity claims truly create a multiple claim situation because any such claim is derivative of claimant Boody's ultimate claim outcome. The cross and counter claims cannot exceed any judgment Boody obtains, of course. However, as mentioned above, the true 'claimant' which would have an indemnity or contribution claim, El Sol, has agreed to endorse the proposed stipulations, thus, the issue is moot.

D.    What Constitutes Appropriate Required Stipulations

In *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.*, 836 F.2d 750 (2d Cir. 1988) the court discussed, and agreed with, a four-part test designed to allow a claimant to proceed in another forum under the lone claimant exception. The court held that to avail himself of the right to avenue a claimant must:

1)    file his claim in the limitation proceeding;
2)    consent to waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court;
3)    concede petitioner shipowner's right to litigate all issues relating to limitation in the limitation proceeding.

Also discussed was a fourth factor, that where a stipulation for value has been filed in

20

lieu of the transfer of the ship to a trustee, there must be a concession of the sufficiency in amount of the stipulation.  The Court of Appeals expressed doubt as to this requirement, but it was not an issue for decision in that case, nor is it in the present matter.

The stipulations in *Complaint of Dammers & Vanderheide* sufficiently covering these topics, including protection against cross-claims for indemnity and contribution were found to provide adequate protection to the vessel owner.  The court stated:

> We believe that [the proffered group of stipulations] (are) significant in that it embodies the claimants' intention that the shipowners shall not, in any set of circumstances, be exposed to liability in excess of the limitation fund. Given this concession, we agree with the procedures employed by the district court. As long as the admiralty court can effectively ensure that a shipowner will not face liability in excess of the limitation fund, it must take all steps necessary to assure that claimants are allowed to pursue their common law remedies in accordance with the "saving to suitors" clause.

Likewise, in *In re Beiswenger,* 86 F.3d 1032 (5th Cir. 1996), the owner of a vessel employed in a parasailing business brought admiralty action under LOLA for limitation of liability with respect to claims arising out of a parasailing accident which killed one person and injured another.  The estate and injured claimant had filed suit in state court prior to the limitation proceeding. The Fifth Circuit reviewed the stipulations the claimants proposed, in order to remand the case for a state court liability and damages trial, and held that damage claimants in a multiple-claims-inadequate-fund case may proceed against a vessel owner outside a limitation proceeding upon filing of appropriate protective stipulations. It held there that the stipulations proposed by claimants would be adequate if they would not seek to enforce any judgment in state court, whether against the vessel owner or a third party entitled to seek indemnity or contribution from the vessel owner, that would expose it to liability in excess of

21

the limitation fund, until the vessel owner's right to limitation was adjudicated in the federal court in admiralty.  Such stipulations, the court noted, are sufficient to convert a multiple claim case for claims exceeding the value of the fund into the "functional equivalent of single claim case" which by law is permitted to be tried in the state court, so long as the vessel owner's right to a limitation proceeding is protected.

      E.      The Stipulations Offered in the Present Matter

By letter dated August 25, 2010, claimant Robert Boody offered to the Petitioner the following stipulations to protect Petitioner's limitation rights, while permitting Boody to return the action to the State court.  The stipulations offered included:

> Provided the Court lifts its Injunction of February 19, 2010 and stays this action to permit the Claimant Robert Boody to proceed against the Petitioner North East Marine, Inc. and other defendants in the New York State court action previously commenced in Supreme Court, Queens County (Index No. 17243/09),

It is hereby stipulated by Claimant Robert Boody by his attorneys, as follows:

1.     Claimant ROBERT BOODY hereby agrees and concedes that petitioner NORTH EAST MARINE, INC. is entitled to and has the right to litigate all issues relating to limitation of liability pursuant to 46 U.S.C. § 183(a) in this court, and this court shall have exclusive jurisdiction to determine that issue.
2.     Claimant will not seek in any action in any state court any judgement or ruling on the issue of petitioner's right to limitation of liability.
3.     Petitioner has the right to have this court determine the value of the vessel as it was immediately following the incident, and this court shall have exclusive jurisdiction to determine that issue.
4.     Claimant hereby consents to waive any claim of *res judicata* based on any judgment that may be entered or which may be recovered in any state court proceeding to the extent it would affect petitioner's right to seek limitation of liability in this court.
5.     In event that in any state court proceeding there is a judgment entered against the Petitioner, or any other liable party who may cross-claim or claim over against petitioner in this proceeding, or in any state

court proceeding arising from or based upon the event or events underlying the filing of the petition for limitation of liability in this matter and said judgment is for an amount in excess of the amount stipulated by petitioner as the value of the vessel after the occurrence, or such other amount found by the Court pursuant to Supplemental Admiralty Rule F, or later stipulated to by the parties ("the vessel's value"), then Claimant stipulates and agrees that he shall not seek to enforce said judgment or recovery insofar as same may expose Petitioner to liability in excess of the vessel's value pending adjudication and resolution of the within Limitation of Liability proceeding.

6.     Claimant stipulates and agrees that if Petitioner is held to be responsible or liable for attorneys' fees and costs which may be assessed against it through a claim asserted by a co-liable defendant or party seeking indemnification therefor, then such claims shall have priority over the claim asserted by Claimant in the event that Petitioner is found by this court to be entitled to limitation of its liability.

As stated above, it is Mr. Boody's understanding is that the only true 'claimant' for indemnity and/or contribution has agreed to abide by the stipulations proposed by claimant Boody. Thus, the stipulations proposed do give North East adequate protection. Thus, on the strength of *In re Dammers & Vanderheide,* 836 F. 2d 750 (2d Cir. 1980) and *In re Beiswenger,* 86 F.3d 1032 (5th Cir. 1996) the well-drafted stipulations between claimant Boody here and petitioner (with or without the participation of the El Sol and Guillet) should be found to sufficiently protect the vessel owner from excess liability, thus upholding the purpose of the Limitation of Liability Act. At the same time, the stay of the limitation proceeding would permit the claimant to prosecute his claim in state court, thus preserving the purpose of the "savings to suitors" legislation.

As discussed above, claimant Boody offered to enter into the necessary protective stipulations set forth and approved by various courts. After review thereof,

the court should order that this action be stayed, if it does not dismiss the petition in its entirety.

## CONCLUSION

Petitioner's Petition is fatally defective and must be dismissed, as petitioner purposely failed to name the true at-fault vessel, the Tug Osage, despite knowledge that it was claimed that this was the primary at fault vessel.  In that more than 6 months have passed since the vessel owner had knowledge of the potential claim which might exceed the value of the vessels at fault, petitioner may not amend nor start a new action seeking limitation related to the OSAGE.

In event the court does not dismiss outright the limitation proceeding, then the court must protect the claimants' saving to suitors clause rights, including the right to a trial by jury in state court, without prejudicing petitioner's right to seek (but not necessarily obtain) limitation of liability.  These conflicting rights should be protected by the court finding, and ordering, that the stipulations offered by the claimants protect both the claimants and the petitioner's rights, and thus, the court should order the federal limitation action stayed and remand the action to the Supreme Court, Queens County, for a liability and damages trial, preserving Petitioner's limitation rights pursuant to the proffered stipulations.

Dated: New York, New York
     September 22, 2011

HOFMANN & SCHWEITZER

By: _____

Paul T. Hofmann (PH1356)
Attorneys for Plaintiff
360 W. 31st Street, Suite 1506
New York, N.Y. 10001
Tel: (212) 465-8840
paulhofmann@hofmannlawfirm.com