DOUGHERTY, RYAN, GIUFFRA,
ZAMBITO & HESSION
Attorneys for Claimant
FRANCOIS GIULLET, NORTHEAST MARINE, INC.
and the TUG OSAGE
250 Park Avenue
Seventh Floor
New York, New York 10177
Phone: 212-889-2300
Fax: 646-485-5630

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IN THE MATTER OF THE PETITION OF NORTH
EAST MARINE, INC. AS OWNER OF THE TUG         Index No: 09 Civ. 5600 (J.Ammon)
ELENA, A 35' DECK BARGE AND A 40' DECK
BARGE, FOR EXONERATION FROM AND
LIMITATION OF LIABILITY,
-----------------------------------------------------------------X

### DECLARATION IN SUPPORT OF NORTHEAST MARINE, INC.'S MOTION TO DISCHARGE ITS CURRENT COUNSEL, AND TO COMPEL THE DEFENSE AND INDEMNITY OF NORTHEAST MARINE BY THE NORTHERN ASSURANCE ASSURANCE COMPANY OF AMERICA

JOHN J. HESSION, being duly sworn, hereby by declares the following as true and subject to the penalties of perjury:

1. I am a Member of the law firm, Dougherty Ryan Giuffra Zambito & Hession, independent counsel for Northeast Marine, Inc. (hereinafter referred to as "Northeast"), and for Northeast as owner of the tug OSAGE, which vessel is currently unnamed in the above captioned Petition for Limitation.

2. I submit the within declaration, along with the attached exhibits, based on my personal knowledge gained from my handling of this matter; a review of the file maintained by my office its regular course of business and all of the prior pleadings and proceedings in this case. This

1

declaration is submitted in support of an Order: 1) discharging Nicoletti, Hornig, Hornig as Counsel for Northeast Marine, Inc; 2) directing The Northern Assurance American Assurance Company to assume liability for the defense of Northeast; 3) directing Northern Assurance to indemnify Northeast for all claims in this action and related actions; and 4) to pay the legal expenses of independent counsel, appointed by Northeast.

## EXHIBITS

**EXHIBIT "A"**: Summons and Complaint filed in Queens Supreme Court, dated June 29, 2009

**EXHIBIT "B"**: Northern Assurance Policy issued to Northeast Marine Inc. covering the the date of the alleged incident.

**EXHIBIT "C"**: Northeast's, Answer dated February 9, 2010

**EXHIBIT "D"**: Petition for Limitation, dated December 22, 2009

**EXHIBIT "E"**: Letter from Richard Stone, Esq., of the firm Waesche, Sheinbaum, as "coverage counsel" for Northern Assurance, dated September 30, 2011

## FACTUAL AND PROCEDURAL HISTORY

3. The plaintiff, Robert Boody, filed an action in the Supreme Court of the State of New York, County of Queens against Northeast claiming injuries arising out of an alleged incident on January 29, 2008 while on a barge involved in construction of the Cross Bay Memorial Bridge in Queens, NY (See the copy of the Summons and Complaint attached hereto as Exhibit "A"). As Mr. Boody's attorney, Paul Hoffman, Esq., correctly points out, the Summons and Complaint in the underlying action alleges negligence in the operation of the tug OSAGE (see Boody's Statement of Facts, p. 4, dated September 22, 2011). Interestingly, the subject Complaint did not make any allegations of negligence with respect to the tug ELENA (See copy of Summons and Complaint, attached hereto as Exhibit "A").

4. At the time of the incident, Northeast owned a number of vessels, including THE TUG ELENA, A 35' DECK BARGE, A 40' DECK BARGE and THE TUG OSAGE. All four (4) vessels were in the area in question at the time of the subject incident.

5. At the time of the accident, Northeast was covered by an insurance policy issued by International Marine Underwriters, as a General Managing Agent for The Northern Assurance Company of America (hereinafter referred to as "Northern Assurance"), under policy # N5JH00855 (see policy attached hereto as Exhibit "B"). The policy lists the insured as "Northeast Marine, Inc." (herein "Northeast") (see policy attached hereto as Exhibit "B").

6. Pursuant to the policy, the insurer, Northern Assurance, appointed defense counsel for Northeast, David Hornig, Esq. of the law firm of Nicoletti, Hornig Hornig & Sweeney (herein "Nicoletti, Hornig"), to defend Northeast against the claims filed by Robert Boody.[1] Consequently, Nicoletti, Hornig filed an Answer in the Supreme Court action on behalf of "Northeast Marine, Inc." on February 9, 2009.

7. At no time did Northern Assurance ever send a partial or total declination or disclaimer of coverage at any time to Northeast, with respect to the subject incident. In addition, Nicoletti, Hornig never informed Northeast that its representation of Northeast Marine in this manner was in any way limited in scope.

8. In addition, on December 22, 2009, Nicoletti, Hornig filed the above captioned Petition in the United States District Court, Eastern District of New York, to limit Northeast's liability, pursuant to 46 U.S.C. § 30501, to the value of the vessels involved in the alleged incident (herein referred to as "Petition" and attached hereto as Exhibit "D"). Most notably, Nicoletti, Hornig

---

[1] In the maritime industry, protection against liability for personal injury claims are often administered through large insurance pools known as "P & I Clubs," that underwrite policies and rigidly control the flow of legal work arising out of such claims. Northern Assurance Company of America is an American P&I Club. Upon information and belief, based on our firm's course of dealing with Nicoletti, Hornig over 30 years, that firm has a long standing relationship with Northern Assurance Company of America that regularly assigns the firm such legal work.

filed the Petition on behalf of "North East Marine as Owners and Operators of the vessels, TUG ELENA, A 35' DECK BARGE AND A 40' DECK BARGE" which were the only vessels to appear in the caption. The tug OSAGE was <u>NOT</u> named by Nicoletti, Hornig in the limitation proceeding (see Petition, attached hereto as Exhibit "D").

9. As a result of Northern Assurance's failure to either appoint independent counsel or disclaim coverage to Northeast for the exposure from the TUG OSAGE in this matter, Northeast was forced to appoint the undersigned firm (Dougherty Ryan) as independent counsel in this proceeding.

10. Despite repeated warnings from the undersigned, Northern Assurance initially refused to provide a defense to Northeast for the tug OSAGE. Following a further written demand by the undersigned, in a letter dated September 30, 2011, Northern Assurance informed Northeast through counsel that it would finally assume the defense of Northeast against all claims in state and federal court in this case as of September 30, 2011. (See letter from Richard Stone, Esq. attached hereto as Exhibit "E").

11. On September 22, 2011, Paul Hoffman, Esq., Counsel for Mr. Boody made a motion seeking in part to dismiss the Petition for Limitation for failure to name all of the vessels allegedly involved in the alleged injuries to Mr. Boody. (see Boody's Motion dated September 22, 2011).

## **ARGUMENT**

**I. Northern Assurance has exercised "bad faith" in the handling of this matter and engaged in a pattern of "gross disregard" and now must indemnify Northeast for exposure and costs resulting therefrom**

12. Insurers have an affirmative duty to conduct the defense of their insureds with "good faith and fair dealing." <u>United National Ins. v. Waterfront N.Y. Realty Corp.</u>, 948 F.Supp. 263

4

(S.D.N.Y. 1996). This duty requires the insurer put the insured's interests on at least "equal footing" with its own interests. See Pavia v. State Farm Mut Auto. Ins. Co., 82 N.Y.2d 445, 453-54 (N.Y. Ct. App. 1993). Moreover, when an insurer shows a "gross disregard" for an insured's interests, it breaches the duty of good faith, thereby exercising "bad faith." See Soto v. State Farm Ins. Co., 83 N.Y.2d 718, 723 (N.Y. Ct. App. 1994). The courts define "gross disregard" as a "conscious indifference" to the exposure of the insured when prosecuting the defense of an action. See New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 295 F.3d 232, 241 (2nd Cir. 2002). Notably, bad faith does not require a "sinister motive." See Pavia, 82 N.Y.2d at 453.

13. New York Courts have found "bad faith" in a variety of contexts, including failure to assert a defense on behalf of the insured. See, e.g., Cornewell v. Safeco Insurance Co. of America, 346 N.Y.S.2d 59, N.Y. App. Div. (4th Dept. 1973)(holding that failure of an insurer to assert a defense on behalf of the defendant, in order to protect the insurer's own financial exposure was "bad faith"); Opel v. Empire Mutual Insurance Co., 517 F. Supp. 1305, 1306 (S.D.N.Y. 1981)(stating that "bad faith" can encompass: the insurers duty to investigate, refusal to settle within the policy limits, failure to inform the insured of a compromise offer, and failure to induce the insured to contribute).

14. An insurer's duty of good faith also requires that it appoint counsel with undivided loyalties to the insured. See United National Ins. Co. v. Waterfront N.Y. Realty Corp., 948 F.Supp. 263 (S.D.N.Y. 1996) ("Implicit in this duty is the appointment of counsel that is competent, as well as free of conflicts or divided loyalties."). An insurer that is guilty of bad faith will be held liable for the damages to the insured resulting therefrom, including additional exposure. See, e.g., New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 295 F.3d

232 (2nd Cir. 2002; where insurer found guilty of bad faith, insurer held liable for excess exposure to the insureds).

15. The facts and circumstances of the case at bar typifies Northern Assurance's utter failure to place Northeast's interests on "equal footing" with its own. As Mr. Boody's counsel, Paul Hoffman, Esq, argues in his motion dated September 22, 2011, a Petition for Limitation of liability must name all vessels involved in the undertaking where the alleged injury occurred (see Boody's Motion of September 22, 2011, citing Standard Dredging Co. v. Krisiansen, 67 F.2d 548, 550 (2nd Cir. 1933)).

16. Although Boody's Complaint in the underlying state court action outlines allegations specifically implicating the tug OSAGE and two other barges, the Petition for Limitation filed by Nicoletti, Hornig did NOT include all of these named vessels (See Boody's state court Complaint, attached hereto as Exhibit "A" and the Petition for Limitation, attached hereto as Exhibit "D"). Shockingly, Nicoletti, Hornig named only three vessels: the TUG ELENA; A 35' DECK BARGE; and A 40' DECK BARGE; but excluded the TUG OSAGE from the Limitation Petition (See Petition for Limitation, attached hereto as Exhibit "D"). Despite the fact that all four (4) of the subject vessels were commonly owned by Northeast, and the fact that Northeast was a "named insured" on the P&I policy issued by Northern Assurance, the Petition for Limitation filed by Nicoletti, Hornig only included the three (3) vessels covered by the P&I policy. (see the P&I policy issued by Northern Assurance, attached hereto at Exhibit "B"). This delicate crafting of the Petition for Limitation amounted to nothing more than a transparent effort to maximize the protection for Northern Assurance at the sole expense of the insured, Northeast.

17. Thus, three vessels named in the Limitation Petition were only the three vessels specifically named under Northern Assurances P&I policy (see policy, attached hereto at Exhibit

"B"). The vessel excluded from the Limitation Petition was the TUG OSAGE, which was <u>not</u> specifically named under the policy, but which was nonetheless owned by Northeast Marine and which was tied to the very barge from which the line which allegedly injured Mr. Boody was tied from (see Boody's Complaint, attached hereto as Exhibit "A"; and the P&I policy attached hereto at Exhibit "B"). Therefore, Nicoletti, Hornig went so far as to name a vessel (the TUG ELENA) that even Boody's counsel never alleged was involved in the accident in question, and yet Nicoletti, Hornig excluded the very vessel specifically named in Boody's state court Complaint!

18. By excluding the TUG OSAGE, Nicoletti, Hornig sought to reduce the monetary value of the potential limitation fund and thereby reduce the potential exposure of Northern Assurance for the vessels named in their policy. Meanwhile, Nicoletti, Hornig's own "client," Northeast, was left without the benefit of the protection of the Petition for Limitation for the liability attributable to the target vessel, the TUG OSAGE.

19. In addition, the circumstances surrounding the defective Petition for Limitation further evidences Northern Assurance's bad faith and gross disregard for the interests of its insured, Northeast. After filing an Answer in the state court action on behalf of Northeast for all claims and failing to disclaim, decline, or limit coverage; Nicoletti, Hornig then filed the defective Petition for Limitation just days before the six (6) month statute of limitations for the Limitation action expired. Moreover, neither Northern Assurance nor its "handpicked" counsel (Nicoletti, Hornig) ever informed the insured (Northeast) that one of the involved vessels was not named in the Petition. Indeed, Northeast did not find out about this failure until <u>after</u> the six (6) month statute of limitation had already expired. Consequently, by failing to name all of the vessels, as required by Federal Statute, the Insured (Northeast), may well lose the benefit of limiting its

7

liability altogether as to all of its vessels, as the subject Limitation Petition may well be held procedurally defective (see Boody's Motion of September 22, 2011).

20. The combination of excluding one of the insured's (Northeast's) vessels from the Limitation Petition on the eve of the filing deadline and also failing to inform the insured (Northeast's) of the exposure with regard to the excluded vessel, clearly evidences a "conscious indifference" for the interests of the insured and therefore Northern Assurance has clearly acted in bad faith in this case. As a direct result of Northern Assurance's "bad faith," Northeast has now had to incur the expenses of independent counsel to move to amend the Petition for Limitation and Northeast may well be prejudiced with respect to its ability to limit liability for all of its vessels. Therefore, Northern Assurance must indemnify Northeast for its exposure related to the OSAGE and reimburse Northeast for the legal expenses associated with the instant motion.

## II. Northern Assurance breached its duty to defend and therefore should pay for the necessary fees for independent counsel

21. New York adheres to the standard rule that the "the duty to defend is greater than the duty to indemnify." See McCostis v. Home Ins. Co. of Ind., 31 F.3d 110, 112 (2nd Cir. 1994); Plants and Goodwin, Inc. v. St. Paul Surplus Lines Ins. Co., 99 F. Supp.2d 293 (W.D.N.Y. 2000). Where a case involves any legal or factual obligations for which the insurer might eventually have to indemnify the insured, the insurer has the duty to defend. See Fitzpatrick v. American Honda Motor Co., 78 N.Y.2d 61, N.Y. Ct. App. (1991) (duty initiated where reasonable possibility that occurrence within policy).

22. Where an insurer wrongfully refuses to defend an insured, the insurer will be held liable for independent attorneys' fees incurred by the insured in defending the underling dispute. See Cunniff v. Westfield, Inc., 829 F. Supp. 55, 58 (E.D.N.Y. 1993) (where insured had to hire own