counsel to litigation underlying dispute because of wrongful refusal to defend, insurer liable for attorneys' fees); National Cas. Ins. Co. v. City of Mount Vernon, 515 N.Y.S.2d 267 269, N.Y. App. Div. (2nd Dept. 1987) (holding insurer liable to reimburse legal expenses incurred by insured for breach duty to defend).

23. Although Nicoletti, Hornig as Northern Assurance's "handpicked" counsel, affirmatively commenced the instant Limitation proceeding in Federal Court, the subject Limitation proceeding is inextricably linked to the defense of Northeast against Boody's personal injury claim in the underlying state court action. Consequently, Northern Assurance's duty to defend Northeast also encompasses the duty to provide independent legal representation in the Federal Court Limitation proceeding.

24. Indeed, Northern Assurance now has blatantly recognized that it has the duty to defend Northeast in both the state and federal courts against all claims in this dispute. Northern Assurance's coverage counsel, Richard Stone, Esq. of Waesche, Sheinbaum recently informed the undersigned that Northern Assurance now accepts that it has the duty to defend Northeast against all claims in this case, including claims against the OSAGE (see letter from Richard Stone, dated September 30, 2011, attached hereto as Exhibit "E").

25. Moreover, Northern Assurance objectively has the duty to defend all claims under the New York rule, as Boody alleges that the subject barge (which was named in the P&I policy, Exhibit "B") and the tug OSAGE (not specifically named in the P&I policy) were effectively acting as one vessel, as part of a flotilla at the time of the accident. As a result, under Fitzpatrick and its progeny, Boody alleges claims for which the insurer may eventually have to indemnify the insured and therefore, the insurer has a duty to defend the insured against all claims in the action in the first instance.

26. Although Northern Assurance has now finally agreed that it has the duty to defend, Northeast, Northern Assurance is still liable for Northeast's expenses in retaining independent counsel. During the time period between the commencement of Boody's state court action and Northern Assurance finally assuming the duty to defend with respect to all claims in this action, Northeast (as the insured) was forced to hire independent counsel to litigate the federal limitation action with respect to Northeast's undefended exposure as a result of the breach of duties by Northern Assurance and the breach of fiduciary duty by Nicoletti, Hornig (Northern Assurance's "handpicked" counsel) to its "client" (Northeast). These legal costs were a direct result of Northern Assurance wrongful refusal to defend Northeast against all claims and therefore under Cunniff, Northern Assurance must reimburse Northeast for these necessary defense costs.

## III. Northern Assurance has the duty to indemnify Northeast resulting from Northern Assurance's unexplained failure to timely disclaim or deny coverage

27. Insurers have an affirmative duty to disclaim or deny coverage as soon as "reasonably possible" after the insurer learns of the grounds for such a disclaimer. See New York Ins. Law § 3420(d) (2) (insurer "shall give written notice as soon as is reasonably possible of such disclaimer or denial of coverage to the insured"). Courts measure the "reasonableness" of the time period for disclaimer purposes from the moment when the insurer has all of the facts necessary on which to disclaim or deny coverage. See McEachron v. State Farm Ins. Co., 742 N.Y.S.2d 925, 926, N.Y. App. Div. (3rd Dept. 2002). Moreover, the burden of proof is on the insurer to demonstrate the reasonableness of the delay in denying or disclaiming coverage. See New York State Ins. Fund v. Mount Vernon Fire Ins. Co., 2005 WL 82036 * 6 (S.D.N.Y. 2001).

28. Notably, an insurer who has assumed the defense of the insured because of the allegations in the Complaint similarly bears the duty to disclaim or deny coverage within a reasonable timer period. See Foremost Ins. Co. v. Rios, 445 N.Y.S.2d 511, 512 (2nd Dept. 1981).

29. Failure to timely disclaim coverage results in estoppel or waiver of the right to disclaim See Bluestein & Sander v. Chicago Ins. Co., 276 F.3d 119, 121-22 (2nd Cir. 2002). As the New York Court of Appeals has stated:

> a failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or the grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial

Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028-29 (N.Y. Ct. App. 1982).

30. Waiver resulting from an untimely disclaimer is unconditional. See Allstate Ins. Co. v. Gross, 27 N.Y.2d 263, 270 (1970) ("the statute lays down an unconditional rule"). An insurer's failure to comply with New York Insurance Law §3420 renders the "disclaimer ineffective, regardless of whether the insured…was in any way prejudiced by the delay." See State Farm Mut. Auto Ins. Co. v. Clift, 671 N.Y.S. 843, 844, N.Y. App. Div. (3rd Dept.).

31. New York Courts have found that a disclaimer is untimely as a matter of law, where the insurer fails to disclaim coverage for a patently unreasonable period of time without explanation. See U.S. Underwriters Ins. Co., v. Klimashevsky, 2001 WL 1217229 (S.D.N.Y. 2005) (insurer's delay of three months unreasonable as a matter of law)

32. Specifically, delays much shorter than the period at issue in the instant matter have been held unreasonable as a matter of law. See, e.g., First Financial Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 70 N.Y. Ct. App. (2003) (48 day delay without an adequate explanation was held to be unreasonable as a matter of law); West 16th St. Tenants Corp. v. Public Service Mut. Ins. Co., 736 N.Y.S.2d 34, N.Y. App. Div. (1st Dept. 2002)(30 days); Matter of Nationwide Mutual Ins. Co. v. Steiner, 606 N.Y.S.2d 391, N.Y. App. Div. (2nd Dept. 1993)(41 days).

33. Northern Assurance's failure to timely disclaim coverage for liability of the tug *OSAGE* in this case warrants coverage by estoppel and a waiver of Northern Assurance's right to otherwise disclaim coverage.

34. Northern Assurance had all of the facts necessary to determine whether or not to decline coverage on June 29, 2010, when Boody filed a Summons and Complaint in the state court action outlining highly specific allegations (see Boody's Summons and Complaint, attached hereto as Exhibit "A"). To date, some 14 months after the Summons and Complaint was filed, Northern Assurance has still not disclaimed coverage to the insured (Northeast) for any of the claims asserted by Boody.

35. Northern Assurance offers no explanation for its utter failure to comply with the mandates of New York Insurance Law § 3420(d). Consequently, under the clear case law in New York, Northern Assurance has failed to timely disclaim coverage within a reasonable period of time as matter of law. Consequently, Northern Assurance has waived its right to disclaim coverage to Northeast and Northern Assurance therefore must indemnify Northeast for its liability for all claims in this action.

**IV. Nicoletti, Hornig has breached its fiduciary duties to their "client" and therefore should be relieved as counsel for Northeast in this action and in the state court proceeding and independent counsel must be appointed at the expense of Northern Assurance**

36. The New York Rules of Professional Responsibility prohibit a lawyer from representing a client where "there is a significant risk the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." See N.Y. Rule of Prof. Resp. Rule 1.7(a) (2). Furthermore, these same rules require that "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" (See N.Y. Rule of Prof. Resp. Rule 1.4b).

37.     If an attorney appointed by an insurer seeks to limit the scope of representation of an insured, the attorney has an affirmative duty to inform the insured of that limitation and seek the

client's consent. The parameters of such limited representation are outlined under New York

Law as follows:

> **A Lawyer may limit the scope of the representation if the limitation is reasonable under
> the circumstances, the client gives informed consent and where necessary notice is
> provided to the tribunal and/or opposing counsel.**
>
> COMMMENT 6/6A: Agreements Limiting the Scope of Representation
> When a lawyer has been retained by an insurer, for example, the representation may be limited
> to issues related to insurance coverage. In obtaining consent from the client, the lawyer must
> adequately disclose the limitations on the scope of the engagement and the matters that will be
> excluded. In addition, the lawyer must disclose the reasonably foreseeable consequences of
> the limitation. In making such disclosure, the lawyers should explain that if the lawyer or the
> client determines during the representation that additional services outside the limited scope
> specified in the engagement are necessary or advisable to represent the client adequately, then
> client may need to retain separate counsel, which could result in delay, additional expense and
> complications.

N.Y. Rule of Prof. Resp. Rule 1.2(b) and comments 6 and 6A.

38.     As in all cases, an attorney appointed by an insurer to represent the insured has the duty

to put the interests of the insured above the interests of the appointing insurer. United National

Ins. Co. v. Waterfront N.Y. Realty Corp., 948 F.Supp. 263 (S.D.N.Y. 1996) ("Implicit in this

duty is the appointment of counsel that is competent as well as free of conflicts or divided

loyalties."). Where there is conflict between the assured and insurer's interests, the attorney

cannot represent both. See Federal Insurance Co. v. North American Specialty Insurance Co.,

847 N.Y.S.2d 7, 12, N.Y. App. Div. (1st Dept. 2007).

39. The proper remedy for cases where the insured has appointed Counsel with divided

loyalties in bad faith is to allow the insured to retain independent counsel. See Ladner v.

American Home Assur. Co., 607 N.Y.S.2d 296, 298, N.Y. App. Div. (1st Dept. 1994) (holding

"when a conflict of interest exists between an insured and the insurer which it is obligated to

defend, the remedy is to permit the insured to select defense counsel, with the reasonable cost of

the defense to be borne by the insurer"). The insurer's duty to defend encompasses the duty to

pay for independent counsel. Prashker v. United States Guarantee Co., 1 N.Y.3d 584, 593, N.Y. Ct. App. (1956).

40. By failing to inform Northeast that it would not defend the tug OSAGE in the Petition for Limitation, Nicoletti, Hornig violated the mandates of Rule 1.2(b) of the New York Code of Professional Conduct. Furthermore, Nicoletti, Hornig's unseemly crafting of the Petition for Limitation so as to maximize protection of the insurer (a P&I club that regularly sends Nicoletti, Hornig business) at the expense of Northeast, Nicoletti, Hornig's nominal "client" typifies that "there is a significant risk the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests amounting to a breach of its fiduciary duties to the client-assured" in violation of Rule 1.7(a)(2) of New York Code of Professional Responsibility.

41. Moreover, the aforementioned offenses were compounded by Nicoletti, Hornig's utter failure to inform Northeast of the additional exposure from the fact that the tug OSAGE was excluded from the Limitation Petition in clear violation of Rule 1.4(b) of New York Code of Professional Responsibility.

42. As a result of Northern Assurance's appointing inadequate counsel, Northeast has been directly prejudiced in this case and has had to incur the necessary costs associated with appointing the undersigned as independent counsel. As outlined in Boody's motion to dismiss the Petition for Limitation (dated September 22, 2011), it appears that Nicoletti, Hornig's failure to properly name all of the vessels may fatally destroy Northeast's ability to seek limitation with respect to ANY of its vessels (see Motion by Boody's counsel, Paul Hoffman, Esq. dated September 22, 2011). Consequently, Nicoletti, Hornig's desire to put the interests of the insurer

14

above the interests of their own client, (Northeast) has already directly damaged that client (Northeast).

43. Consequently, Nicoletti, Hornig has a glaring conflict of interest and is therefore woefully inadequate counsel for Northeast in this matter, as well as the state court action, and therefore must be discharged as counsel of record for Northeast Marine.    Under the circumstances, Northeast has the right to appoint independent counsel.  In light of the "bad faith" and "gross disregard" of Northern Assurance in these actions, Northern Assurance must bear the costs of independent counsel, as a matter of equity.

44. Without wishing in any way to further prejudice the rights of Northeast, in view of the fact that the proposed stipulation by Boody's counsel seems to protect the rights of Northeast Marine to seek Limitation at a later date, we are inclined to join in that Stipulation and ask the Court to stay this action and allow the state court matter to proceed.

**WHEREFORE**, the undersigned respectfully requests that the Court enter an Order: 1) discharging Nicoletti, Hornig as Counsel for Northeast Marine, Inc.; 2) directing The Northern Assurance Company of America to assume liability for the defense of Northeast Marine, Inc.; 3) directing Northern Assurance to indemnify Northeast for all claims in this and related actions; and 4) pay legal expenses of independent counsel appointed by the Northeast.

Dated: New York, New York
October 5, 2011

JOHN J. HESSION (3501 JH)
DOUGHERTY, RYAN, GIUFFRA,
ZAMBITO & HESSION
Attorneys for Northeast Marine, Inc.
250 Park Avenue
Seventh Floor
New York, New York 10177
Phone: 212-889-2300

15

TO: HOFMANN & ASSOCIATES
Attorneys for Plaintiff ROBERT BOODY
360 West 31st Street
Suite 1506
New York, New York 10001
(212) 465-8840

NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street
7th Floor
New York, New York 10005
(212) 220-3830

PILLINGER MILLER TARALLO, LLP
570 Taxter Road
Suite 2
Elmsford, New York 10523
(914) 702-6300

WAESCHE, SHEINBAUM & O'REGAN, P.C.
111 Broadway
Fourth Floor
New York, New York 10006
(212) 227-3550

16