DOUGHERTY, RYAN, GIUFFRA,
ZAMBITO & HESSION
Attorneys for Claimant
FRANCOIS GIULLET, NORTHEAST MARINE, INC.
and the TUG OSAGE
250 Park Avenue
Seventh Floor
New York, New York 10177
Phone: 212-889-2300
Fax: 646-485-5630

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN THE MATTER OF THE PETITION OF NORTH
EAST MARINE, INC. AS OWNER OF THE TUG            Index No: 09 Civ. 5600 (J.Ammon)
ELENA, A 35' DECK BARGE AND A 40' DECK
BARGE, FOR EXONERATION FROM AND
LIMITATION OF LIABILITY,
------------------------------------------------------------------X

### NORTH EAST MARINE INC.'s (AS OWNER AND OPERATOR OF THE TUG OSAGE) RULE 56.1 COUNTER-STATEMENT IN SUPPORT OF CLAIMANT BOODY'S MOTION TO DISMISS OR ALTERNATIVELY TO AMEND THE PEITION TO INCLUDE THE TUG OSAGE AND TO DISCHARGE OTHER COUNSEL FOR NORTH EAST MARINE, INC. AND TO COMPEL THE DEFENSE AND INDEMNITY FO NORTH EAST MARINE, INC. BY THE NORTHERN ASSURANCE COMPANY OF AMERICA

1. The plaintiff, Robert Boody, filed an action in the Supreme Court of the State of New York, County of Queens against Northeast claiming injuries arising out of an alleged incident on January 29, 2008, while on a barge involved in construction of the Cross Bay Memorial Bridge in Queens, NY (see the copy of the Summons and Complaint attached as Exhibit "A" to the Declaration in Support of John J. Hession, dated October 5, 2011).[1]

2. The Summons and Complaint in the underlying action alleges negligence in the operation of the tug OSAGE (see Boody's Statement of Facts, p. 4, dated September 22, 2011). The subject Complaint did not make any allegations of negligence with respect to the tug ELENA.

---

[1] Henceforth all references will be to exhibits attached to the aforesaid Declaration.

1

3. At the time of the incident, Northeast owned a number of vessels, including THE TUG ELENA, A 35' DECK BARGE, A 40' DECK BARGE and THE TUG OSAGE. All four (4) vessels were in the area in question at the time of the subject incident.

4. At the time of the accident, Northeast was covered by an insurance policy issued by International Marine Underwriters, as a General Managing Agent for The Northern Assurance Company of America (hereinafter referred to as "Northern Assurance"), under policy # N5JH00855 (see policy attached as Exhibit "B" to the Declaration of John J. Hession dated October 5, 2011). The policy lists the insured as "Northeast Marine, Inc." (herein "Northeast").

5. Pursuant to said policy, the insurer, Northern Assurance, appointed defense counsel for Northeast, David Hornig, Esq. of the law firm of Nicoletti, Hornig Hornig & Sweeney (herein "Nicoletti, Hornig"), to defend Northeast against the claims filed by Robert Boody. Consequently, Nicoletti, Hornig filed an Answer in the Supreme Court action on behalf of "Northeast Marine, Inc." on February 9, 2009.

6. At no time did Northern Assurance ever send a partial or total declination or disclaimer of coverage at any time to Northeast, with respect to the subject incident. In addition, Nicoletti, Hornig never informed Northeast that its representation of Northeast Marine in this manner was in any way limited in scope.

7. In addition, on December 22, 2009, Nicoletti, Hornig filed the above captioned Petition in the United States District Court, Eastern District of New York, to limit Northeast's liability, pursuant to 46 U.S.C. § 30501, to the value of the vessels involved in the alleged incident (herein referred to as "Petition" and attached as Exhibit "D" to the Declaration of John J. Hession, dated October 5, 2011). Most notably, Nicoletti, Hornig filed the Petition on behalf of "North East Marine as Owners and Operators of the vessels, TUG ELENA, A 35' DECK BARGE AND A 40' DECK BARGE" which were the only vessels to appear in the caption. The tug OSAGE was **NOT** named by

Nicoletti, Hornig in the limitation proceeding (see Petition, attached as Exhibit "D" to the Declaration of John J. Hession, dated October 5, 2011).

8. As a result of Northern Assurance's failure to either appoint independent counsel or disclaim coverage to Northeast for the exposure from the TUG OSAGE in this matter, Northeast was forced to appoint the undersigned firm (Dougherty Ryan) as independent counsel in this proceeding.

9. Despite repeated warnings from the undersigned, Northern Assurance initially refused to provide a defense to Northeast for the tug OSAGE. Following a further written demand by the undersigned, in a letter dated September 30, 2011, Northern Assurance informed Northeast through counsel that it would finally assume the defense of Northeast against all claims in state and federal court in this case as of September 30, 2011 (see letter from Richard Stone, Esq. attached as Exhibit "E" to the Declaration of John J. Hession dated October 5, 2011).

10. On September 22, 2011, Paul Hoffman, Esq., Counsel for Mr. Boody made a motion seeking in part to dismiss the Petition for Limitation for failure to name all of the vessels allegedly involved in the alleged injuries to Mr. Boody (see Boody's Motion, dated September 22, 2011).

11. Northern Assurance has exercised "bad faith" in the handling of this matter and engaged in a pattern of "gross disregard" and now must indemnify Northeast for exposure and costs resulting therefrom.

12. The facts and circumstances of the case at bar typify Northern Assurance's utter failure to place Northeast's interests on "equal footing" with its own. As Mr. Boody's counsel, Paul Hoffman, Esq, argues in his motion dated September 22, 2011, a Petition for Limitation of liability must name all vessels involved in the undertaking where the alleged injury occurred.

13. Although Boody's Complaint in the underlying state court action outlines allegations specifically implicating the tug OSAGE and two other barges, the Petition for Limitation filed by Nicoletti, Hornig did <u>NOT</u> include all of these named vessels (See Boody's state court Complaint,

attached as Exhibit "A" and the Petition for Limitation, attached as Exhibit "D" to the Declaration of John J. Hession dated October 5, 2011).

14. Nicoletti, Hornig named only three vessels: the TUG ELENA; A 35' DECK BARGE; and A 40' DECK BARGE; but excluded the TUG OSAGE from the Limitation Petition (See Petition for Limitation, attached as Exhibit "D" to the Declaration of John J. Hession dated October 5, 2011). Despite the fact that all four (4) of the subject vessels were commonly owned by Northeast, and the fact that Northeast was a "named insured" on the P&I policy issued by Northern Assurance, the Petition for Limitation filed by Nicoletti, Hornig only included the three (3) vessels covered by the P&I policy (see the P&I policy issued by Northern Assurance, attached as Exhibit "B" to the Declaration of John J. Hession dated October 5, 2011).

15. Thus, three vessels named in the Limitation Petition were only the three vessels specifically named under Northern Assurances P&I policy (see policy, attached as Exhibit "B" to the Declaration of John J. Hession dated October 5, 2011). The vessel excluded from the Limitation Petition was the TUG OSAGE, which was <u>not</u> specifically named under the policy, but which was nonetheless owned by Northeast Marine and which was tied to the very barge from which the line which allegedly injured Mr. Boody was tied from (see Boody's Complaint, attached hereto as Exhibit "A"; and the P&I policy attached as Exhibit "B" to the Declaration of John J. Hession dated October 5, 2011). Therefore, Nicoletti, Hornig went so far as to name a vessel (the TUG ELENA) that even Boody's counsel never alleged was involved in the accident in question, and yet Nicoletti, Hornig excluded the very vessel specifically named in Boody's state court Complaint.

16. By excluding the TUG OSAGE, Nicoletti, Hornig sought to reduce the monetary value of the potential limitation fund and thereby reduce the potential exposure of Northern Assurance for the vessels named in their policy. Meanwhile, Nicoletti, Hornig's own "client," Northeast, was left

without the benefit of the protection of the Petition for Limitation for the liability attributable to the target vessel, the TUG OSAGE.

17. In addition, the circumstances surrounding the defective Petition for Limitation further evidences Northern Assurance's bad faith and gross disregard for the interests of its insured, Northeast. After filing an Answer in the state court action on behalf of Northeast for all claims and failing to disclaim, decline, or limit coverage; Nicoletti, Hornig then filed the defective Petition for Limitation just days before the six (6) month statute of limitations for the Limitation action expired.

18. Neither Northern Assurance nor its "handpicked" counsel (Nicoletti, Hornig) ever informed the insured (Northeast) that one of the involved vessels was not named in the Petition. Indeed, Northeast did not find out about this failure until <u>after</u> the six (6) month statute of limitation had already expired. Consequently, by failing to name all of the vessels, as required by Federal Statute, the Insured (Northeast), may well lose the benefit of limiting its liability altogether as to all of its vessels, as the subject Limitation Petition may well be held procedurally defective (see Boody's Motion of September 22, 2011).

19. The combination of excluding one of the insured's (Northeast's) vessels from the Limitation Petition on the eve of the filing deadline, while likewise failing to inform the insured (Northeast's) of the exposure with regard to the excluded vessel, clearly evidences a "conscious indifference" for the interests of the insured and therefore Northern Assurance has clearly acted in bad faith in this case.

20. As a direct result of Northern Assurance's "bad faith," Northeast has now had to incur the expenses of independent counsel to move to amend the Petition for Limitation and Northeast may well be prejudiced with respect to its ability to limit liability for all of its vessels. Therefore, Northern Assurance must indemnify Northeast for its exposure related to the OSAGE and reimburse Northeast for the legal expenses associated with the instant motion.

21. Northern Assurance breached its duty to defend and therefore should pay for the necessary fees for independent counsel.

22. Although Nicoletti, Hornig as Northern Assurance's "handpicked" counsel, affirmatively commenced the instant Limitation proceeding in Federal Court, the subject Limitation proceeding is inextricably linked to the defense of Northeast against Boody's personal injury claim in the underlying state court action. Consequently, Northern Assurance's duty to defend Northeast also encompasses the duty to provide independent legal representation in the Federal Court Limitation proceeding.

23. Indeed, Northern Assurance now has belatedly recognized that it has the duty to defend Northeast in both the state and federal courts against all claims in this dispute. Northern Assurance's coverage counsel, Richard Stone, Esq. of Waesche, Sheinbaum recently informed the undersigned that Northern Assurance now accepts that it has the duty to defend Northeast against all claims in this case, including claims against the OSAGE (see letter from Richard Stone, dated September 30, 2011, attached as Exhibit "E" to the Declaration of John J. Hession dated October 5, 2011).

24. Moreover, Northern Assurance objectively has the duty to defend all claims under the New York rule, as Boody alleges that the subject barge (which was named in the P&I policy, Exhibit "B" to the Declaration of John J. Hession dated October 5, 2011) and the tug OSAGE (not specifically named in the P&I policy) were effectively acting as one vessel, as part of a flotilla at the time of the accident. As a result, Boody alleges claims for which the insurer may eventually have to indemnify the insured and therefore, the insurer has a duty to defend the insured against all claims in the action in the first instance.

25. Although Northern Assurance has now finally agreed that it has the duty to defend, Northeast, Northern Assurance is still liable for Northeast's expenses in retaining independent counsel. During the time period between the commencement of Boody's state court action and

Northern Assurance finally assuming the duty to defend with respect to all claims in this action, Northeast (as the insured) was forced to hire independent counsel to litigate the federal limitation action with respect to Northeast's undefended exposure as a result of the breach of duties by Northern Assurance and the breach of fiduciary duty by Nicoletti, Hornig (Northern Assurance's "handpicked" counsel) to its "client" (Northeast).

26. These legal costs were a direct result of Northern Assurance wrongful refusal to defend Northeast against all claims and therefore under Cunniff, Northern Assurance must reimburse Northeast for these necessary defense costs.

27. Northern Assurance has the duty to indemnify Northeast resulting from Northern Assurance's unexplained failure to timely disclaim or deny coverage.

28. Northern Assurance's failure to timely disclaim coverage for liability of the tug *OSAGE* in this case warrants coverage by estoppel and a waiver of Northern Assurance's right to otherwise disclaim coverage.

29. Northern Assurance had all of the facts necessary to determine whether or not to decline coverage on June 29, 2010, when Boody filed a Summons and Complaint in the state court action outlining highly specific allegations (see Boody's Summons and Complaint, attached as Exhibit "A" to the Declaration of John J. Hession dated October 5, 2011). To date, some two years after the Summons and Complaint was filed, Northern Assurance has still not disclaimed coverage to the insured (Northeast) for any of the claims asserted by Boody.

30. Northern Assurance offers no explanation for its utter failure to comply with the mandates of New York Insurance Law § 3420(d). Consequently, under the clear case law in New York, Northern Assurance has failed to timely disclaim coverage within a reasonable period of time as matter of law. Consequently, Northern Assurance has waived its right to disclaim coverage to Northeast and Northern Assurance therefore must indemnify Northeast for its liability for all claims in this action.

31. Nicoletti, Hornig has breached its fiduciary duties to their "client" and therefore should be relieved as counsel for Northeast in this action and in the state court proceeding and independent counsel must be appointed at the expense of Northern Assurance.

32. As a result of Northern Assurance's appointing inadequate counsel, Northeast has been directly prejudiced in this case and has had to incur the necessary costs associated with appointing the undersigned as independent counsel.

33. As outlined in Boody's motion to dismiss the Petition for Limitation (dated September 22, 2011), it appears that Nicoletti, Hornig's failure to properly name all of the vessels may fatally destroy Northeast's ability to seek limitation with respect to ANY of its vessels (see Motion by Boody's counsel, Paul Hoffman, Esq. dated September 22, 2011).

Dated: New York, New York
June 1, 2012

*[signature]*

JOHN J. HESSION (3501 JH)
DOUGHERTY, RYAN, GIUFFRA,
ZAMBITO & HESSION
Attorneys for Northeast Marine, Inc.
250 Park Avenue
Seventh Floor
New York, New York 10177
Phone: 212-889-2300

TO: HOFMANN & ASSOCIATES
Attorneys for Plaintiff ROBERT BOODY
360 West 31st Street
Suite 1506
New York, New York 10001
(212) 465-8840

NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street
7th Floor
New York, New York 10005
(212) 220-3830

8

PILLINGER MILLER TARALLO, LLP
570 Taxter Road
Suite 2
Elmsford, New York 10523
(914) 702-6300

WAESCHE, SHEINBAUM & O'REGAN, P.C.
111 Broadway
Fourth Floor
New York, New York 10006
(212) 227-3550